# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

                            **Plaintiff,**

-vs-                                                            Case No.  6:14-cv-958-Orl-22DAB

AMY CUSHING, individually and as
Personal Representative of the Estate of
BRANDON MICHAEL FRITZ, Deceased;
AMATEUR ATHLETIC UNION OF THE
UNITED STATES, INC., a Foreign
corporation, BREVARD ELITE PALM
BAY, INC., a Florida corporation, DAVID
TYRONE JOHNSON, ZACHARY
STEPHEN ROY, ROBERT JACOB ROY,
ROBERT A. ROY, and SHANNON ROY,

                            **Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

        This cause came on for consideration without oral argument on the following motions filed

herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 60)** |
| **FILED:** | **May 28, 2015** |
| **THEREON** it is **RECOMMENDED** that the motion be **DENIED**. | |
| **MOTION:** | **AMY CUSHING'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 70)** |
| **FILED:** | **July 29, 2015** |
| **THEREON** it is **RECOMMENDED** that the motion be **DENIED**. | |

*Introduction*

In this action for declaratory relief pursuant to 28 U.S.C. §2201 (Doc. 1), Plaintiff, State Farm Mutual Automobile Insurance Company (herein "State Farm"), seeks a determination as to whether it owes a duty to defend and indemnify Defendants Amateur Athletic Union of the United States, Inc. (herein "AAU"), Brevard Elite Palm Bay, Inc., David Tyrone Johnson, Zachary Stephen Roy (herein "Zachary"), Robert Jacob Roy (herein "Jake"), Robert A. Roy (herein "Mr. Roy"), and Shannon Roy (herein"Mrs. Roy"),[1] against a wrongful death claim asserted against them in a state court action filed by Amy Cushing, as personal representative of the Estate of Brandon Michael Fritz (herein "Cushing").   AAU answered the Complaint, and raised affirmative defenses (Doc. 13).   Cushing answered, and pled entitlement to an award of attorney's fees under state law (Doc. 57). Clerk's defaults have been issued against all other Defendants.  The case now presents on  dueling motions for summary judgment.

In its motion, State Farm asserts that the insurance policy ("the Policy") it issued to Mr. Roy does not provide liability insurance coverage for the claims asserted by Cushing. State Farm has filed the Affidavit of Mike Wallace (Docs. 61) with attached copy of the Policy (Doc. 67), and transcripts of examinations under oath ("EUO") of Mr. and Mrs. Roy, Jake and Zachary (Docs. 62-65).  In her response, Cushing disagrees with State Farm, and asserts her own motion for a declaration that there is liability coverage (Doc. 70).  In support, she filed the depositions of  Mr. and Mrs. Roy, Jake and Zachary (Doc. 70-1 through Doc. 70-4).  AAU has also filed a response to State Farm's motion (Doc. 72), urging its denial.  State Farm has filed a response to Cushing's motion for summary judgment

---

[1]Mr. Robert A. Roy and Mrs. Shannon Roy are the parents of brothers Zachary Roy and Robert Jacob Roy. At the time of the accident which is the underlying subject of this suit, Zachary Roy was a minor driving his adult brother's car. Further, Mr. And Mrs. Roy were experiencing marital difficulties, the relevance of which will become clear herein.  Due to the similarity of the names with respect to the elder and younger Robert Roys and to avoid confusion, the Court refers to the father as Mr. Roy, the mother as Mrs. Roy, the older brother as Jake, and the younger brother as Zachary.

(Doc. 76).  The District Judge referred both motions to the undersigned United States Magistrate Judge on August 19, 2015 (Doc. 77).

Having considered the record evidence, the arguments of the parties,[2] and the applicable law, the Court agrees with AAU that the existence of a genuine issue of material fact precludes entry of summary judgment for *either* party, and **respectfully recommends** that both motions be **denied**.

### I.  Facts

The following uncontested allegations from the Complaint are pertinent here and are taken as true, for present purposes. State Farm issued an automobile insurance policy to Robert A. Roy as the named insured.  The Policy provided bodily injury liability insurance coverage pursuant to the terms, conditions and limitations of that policy, and listed as the insured vehicle a 2007 Dodge Ram pickup truck (Doc. 1, ¶¶ 15-17).

Jake Roy was one of the coaches of a youth basketball team. One of the team members was his younger brother, Zachary. The team attended a tournament in Orlando, Florida on March 25, 2012. On that date, Jake owned a 2000 Chevrolet Tahoe ("the Suburban"), which was being operated by Zachary, with Jake's permission (¶¶ 18-19). Lucious McKay, Dymond Thomas, Michael McCauley, Alexander Hartfield and Brandon Fritz were passengers in the Suburban. According to the allegations of the state court complaint filed by Cushing and attached to the instant Complaint, while Zachary was driving, he was in an accident and Brandon Fritz was killed (Doc. 1-2). As Personal Representative of his estate, Cushing filed an action for damages in state court against Defendants, contending that the accident was caused by their negligence or fault (Doc. 1, ¶20).

Although the parties disagree as to the interpretation of the Policy language,  certain provisions are pertinent here.

---

[2] Pending before the District Judge is a motion to strike Cushing's Opinion Report of Michael Sapourn (Doc. 71). Because the undersigned determines that, regardless of the Opinion Report, genuine issues of material fact preclude entry of summary judgment at this time, the ultimate resolution of the pending motion to strike is of no moment here.

**A.** Under the section entitled "**Defined Words**" the Policy includes the following:

*Newly Acquired Car* - means a replacement car or an additional car.
*Replacement Car* - means a car purchased by or leased to *you* or *your spouse* to replace your car.
This policy will only provide coverage for the replacement car if *you* or *your spouse*:

1.  tell us about it within 30 days after its delivery to you or your spouse; and
2.  pay us any added amount due.

*Additional Car* -means an added car purchased by or leased to *you* or *your spouse*.
This policy will only provide coverage for the *additional car* if:

1.  It is a private passenger car and we insure all other private passenger  cars; or
2.   It is other than a private passenger car and we insure all cars
owned by *you* or *your spouse* on the date of its delivery to *you* or *your spouse*.

     *       *       *

*Non-Owned  Car* -means a car not owned, registered or leased by:
1. *you, your spouse*;
2. any *relative* unless the car meets the requirements described below;
3. any other *person* residing in the same household as *you, your spouse* or any *relative*; or
4. an employer of *you, your spouse* or any *relative*.

A car owned, registered or leased by a *relative* is considered a *non-owned car* if, at the time of the accident or *loss,* the car has been insured for liability coverage within the last 30 days and is driven by an *insured* who does not own or lease the car.
    *       *       *
*Relative* - as used in Sections I, III, IV and V means a *person*
related to *you* or *your spouse* by blood, marriage or adoption
(including a ward or foster child) who resides primarily with *you*.
It includes your unmarried and emancipated child away at school.
    *       *       *
*Spouse* - means *your* husband or wife who resides primarily with
*you*.
    *       *       *
**B.** Section 1, entitled **Liability Coverages** provides, in part:

We will:
1. Pay damages which an *insured* becomes legally liable to pay because of:
    a. *bodily injury* to others, and
    b. damage to or destruction of property including loss of its use,
caused by accident resulting from the ownership, maintenance or use of *your car;* and
2. Defend any suit against an *insured* for such damages with attorneys hired and paid by us.
    *       *       *

**Coverage for the Use of Other Cars**

The liability coverage extends to the use by an *insured*, of a *newly acquired car*, a *temporary substitute car* or a *non-owned car*.

      *    *    *

When we refer to a *non-owned car, insured* means:
1. the first *person* named in the declarations;
2. his or her *spouse*;
3. their *relatives*; and
4. any *person* or organization which does not own or hire the *car* but is liable for its use by one of the above *persons.*

Cushing contends that the State Farm Policy provides liability insurance coverage for the claims she has asserted against the Defendants. State Farm believes that liability insurance coverage for these claims is not available.

## II.  Summary Judgment Standard

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and compels judgment as a matter of law. Fed .R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) "A genuine factual dispute exists if the jury could return a verdict for the non-moving party." *Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1085 (11th Cir. 2004) (internal quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

## III. Analysis

At issue is whether the terms of the Policy extend to cover the accident Zachary had while driving Jake's Suburban. As this is a state law issue before the Court on diversity jurisdiction, the

Court looks to the law of Florida for the appropriate legal standards. In this context, the Eleventh

Circuit has noted:

> In interpreting insurance contracts, the Florida Supreme Court [fn omitted] has made
> clear that "the language of the policy is the most important factor." *Taurus Holdings,*
> *Inc. v. United States Fid. and Guar. Co.*, 913 So.2d 528, 537 (Fla. 2005). "Under
> Florida law, insurance contracts are construed according to their plain meaning."
> *Taurus*, 913 So.2d at 532. Ambiguities in policy language "are construed against the
> insurer" in favor of coverage. *Deni Assocs. of Fla. v. State Farm Fire & Cas. Ins. Co.*,
> 711 So.2d 1135, 1140 (Fla.1998). A contract provision is considered ambiguous if the
> "relevant policy language is susceptible to more than one reasonable interpretation,
> one providing coverage and the other limiting coverage." *Taurus*, 913 So.2d at 532
> (alterations and citations omitted). However, "to allow for such a construction the
> provision must actually be ambiguous ... [and] courts may not rewrite contracts, add
> meaning that is not present, or otherwise reach results contrary to the intentions of the
> parties." *Id*. (citations omitted).

*James River Ins. Co. v. Ground Down Engineering, Inc.,* 540 F.3d 1270, 1274 (11th Cir. 2008). *See*

*also Geico Indem. Co. v. Nelson*, 448 Fed. Appx. 925, 926 (11th Cir. 2011) ("In Florida, terms in

insurance policies that tend to limit or avoid liability are 'to be construed most liberally in favor of

the insured and strictly against the insurer'") (internal citation omitted); *United States Fire Ins. Co.*

*v. J. S. U. B., Inc.*, 979 So. 2d 871, 877 (Fla. 2007) (insurance contracts are construed according to

their plain meaning, with any ambiguities construed against the insurer).

Here, the Suburban is not owned by Mr. Roy and is not listed in the Policy as an additional

car. Further, there is no contention that the Suburban is a "newly acquired car" or a "temporary

substitute car," as defined under the Policy. Thus, the parties appear to agree that the Policy would

provide liability insurance coverage only if 1) the Suburban could be considered a "non-owned car"

and 2) Zachary is a "relative," defined as a person related to Mr. Roy (the insured) who resides

"primarily" with Mr. Roy. As the Suburban is owned by Jake, in order for it to be a "non-owned car,"

Jake must *not* be a "relative" (as defined above).[3]   Therefore, as State Farm notes, the threshold

---

[3]It appears conceded that the Suburban was not independently insured for liability coverage during the pertinent
time period, and thus, cannot fall under the exception provided for cars owned by a relative that are insured at the time of
the accident.

question is whether Jake could be considered to be "primarily residing" with State Farm's named insured, Mr. Roy, at the time of the accident. If he was not, then the Suburban is a non-owned car under the Policy; if he was, then the Suburban would not be a non-owned car, and there is no coverage.

"The issue of residency under an insurance policy is typically a factual matter." *New Hampshire Indem. Co., Inc. v. Reid*, No. 3:05-CV-1280-J-12MCR, 2007 WL 473677, at *2 (M.D. Fla. Feb. 8, 2007) *aff'd New Hampshire Indem. Co. v. Reid*, 294 Fed. Appx. 459 (11th Cir. 2008); *cf. State Farm Mut. Auto. Ins. Co. v. Colon*, 880 So. 2d 782, 783 (Fla. 2nd DCA 2004) ("Residency in a household is a mixed question of law and fact to be determined based on the facts of each individual case"). Here, the facts pertaining to the residency of the family members is anything but clear.

In its motion, State Farm refers to the statements under oath of Mr. Roy, Mrs. Roy, Jake and Zachary. As set forth in these papers, the living arrangements of the Roy family were fluid and each of the family members gave differing accounts as to where each of the four were living at the time of the accident (Docs. 62-65):

> A) In his examination, Mr. Roy testified that at the time of the accident, he lived at 1616 Long Pine Road in Melbourne, Florida (Robert Roy EUO pg. 15). He also stated that both Jake and Zachary lived with him at the Long Pine Road residence, and his spouse, Mrs. Roy, lived separately in an apartment complex known as Tuscany Apartments (Robert Roy EUO pg. 15).

> B) In his examination, Zachary stated that he lived with his father and his brother at the Long Pine Road residence at the time of the accident (Zachary Roy EUO pg. 7, 13).

> C) Jake Roy testified in his examination that he was presently living at 3709 Teakwood Court -- a property he owns and has been residing at "on and off for – since around 2010" (Jake Roy EUO, pg. 6).  At the time of the accident, Jake stated he was "living at Long Pine" with his mother and his brother, and his father was staying at Teakwood Court (Jake Roy EUO pg. 6, 13).  Jake's driver's license lists Teakwood Court as his address, and the Suburban and another vehicle he owned were registered with the Teakwood Court address (Jake Roy EUO, pp. 13-14).

D) In her statement, Mrs. Roy testified that she was living at the Long Pine Road address with Jake and Zachary at the time of the accident, and Mr. Roy lived at the Teakwood Court home (Shannon Roy EUO pg. 7, 12).

State Farm contends that regardless of which family member is to be believed, there can be no coverage, summarizing its argument in the following chart:

|  | **Robert** | **Jake** | **Zachary** | **Shannon** |
|---|---|---|---|---|
| Robert's primary residence at time of accident | Long Pine Road | Teakwood Court | Long Pine Road | Teakwood Court |
| Zachary's primary residence at time of accident | Long Pine Road | Long Pine Road | Long Pine Road | Long Pine Road |
| Jake's primary residence at time of accident | Tuscany Apartments | Long Pine Road | Tuscany Apartments | Long Pine Road |
| Shannon's primary residence at time of accident | Tuscany Apartments | Long Pine Road | Tuscany Apartments | Long Pine Road |
| Result | No coverage because not a non-owned car | No coverage for anyone because Zachary, Shannon and Jake not a relative living primarily with insured | No coverage because not a non-owned car | No coverage for anyone because Zachary, Shannon and Jake not a relative living primarily with insured |

(Doc. 60, p. 18).

However, the record also includes the depositions of the family members, taken in the state court case. Again, the testimony is not consistent:

A) In his deposition, Mr. Roy testified that he has owned and lived at 1612 Long Pine Road since 2000 (Doc. 70-1). He testified that in March of 2012, including the date of the accident, all four Roys were living at Long Pine Road. Mr. Roy stated that his drivers license, voter's registration, and work address (home office) are all Long Pine Road. According to Mr. Roy, he occasionally stayed at his son Jake's house "for a

few days," but did not have any intent to make that his residence (Doc. 70-1, p. 7-9, 14).[4]

B) Jake testified in deposition that his current address is 3709 Teakwood Court, and he has lived there for "around four years" and is "in the middle of renovating it right now" (Doc. 70-3, pp. 6-7).

C) Mrs. Roy testified in deposition that she resides at 341 Tuscany Way, but on March 25, 2012, she resided at Long Pine Road, with her husband and two sons (Doc. 70-4, p. 5).

D) Zachary testified in his deposition that, at the time of his accident, he was living at Long Pine Road with his mother, father and brother (Doc. 70-2, pp. 8-9). His clothes were there, his driver's license listed that address, and he is registered to vote at that address.[5] He has never used any other address than Long Pine Road. *Id.*, p. 13. He testified that, at some time, his mother moved into a place on Tuscany Way and he occasionally stayed at his mother's place for a few days, "a week at most." *Id* at p. 68. He also stated that his father would occasionally stay at his brother Jake's house "every now and then" but "it's not like he was permanently there . . ." *Id.*, p. 67.

Cushing contends that this evidence can be construed to find coverage.

Upon review, the Court finds that genuine issues of material fact as to the residency of the family members precludes the entry of summary judgment for either side.

With respect to State Farm's chart, the argument erroneously presumes that the fact-finder must accept the entirety of a witness's testimony in its entirety. Of course, such is not the case. Under both federal and Florida law, juries weigh the credibility of a witness and are free to accept or reject particular portions of testimony if, for example, it is inconsistent with other testimony or evidence. *See Moore v. Chesapeake & O. Ry. Co.*, 340 U.S. 573, 576, 71 S. Ct. 428, 429, 95 L. Ed. 547 (1951) ("True, it is the jury's function to credit or discredit all or part of the testimony"); *Myron v. South Broward Hospital District*, 703 So. 2d 527, 531 (Fla. 4th DCA 1997) ("[A] jury is the judge of the credibility of the witnesses and the evidence, and a jury is free to believe parts of a witness' testimony and disbelieve other parts."); *Wynne v. Adside*, 163 So. 2d 760, 763 (Fla. 1st DCA 1964)

---

[4]Mr. Roy testified in deposition that he occasionally stayed at his son's place "[t]o be able to breathe and get away from my wife," but he always intended to keep Long Pine Road as his residence (Doc. 70-1, p. 14).

[5]The Court presumes he was not registered to vote at the time of the accident, when he was a minor.

(noting the "obvious and basic principle that a jury is not required to accept a witness' testimony in its entirety or wholly reject it, for the jury may accept such portions of a witness' testimony as they may deem credible and consistent with the proven circumstances and probabilities and at the same time reject other portions which they deem incredible or inconsistent with the proven circumstances and probabilities").  The fact that the family gives differing accounts here implicates credibility issues and is, itself, enough to leave the matter to the jury.

Moreover, even if there were no contradictory testimony as to where each member was "living" at the time of the accident, this is not enough; the Policy language, interpreted pursuant to its plain meaning, requires a showing of where each member was *primarily residing*.  This distinction is not adequately addressed by State Farm in its papers.  Although State Farm advises the Court that "[t]here are just a few Florida cases that address the newer policy with the 'residing primarily' language," offering *Bonich v. State Farm Mut. Auto. Ins. Co.,* 996 So.2d 942 (Fla. 2d DCA 2008) [6] and *Dwelle v. State Farm Mut. Auto. Ins. Co.*, 839 So. 2d 897 (Fla. 1st DCA 2003),[7] it inexplicably fails to cite *State Farm Mut. Auto. Ins. Co. v. Colon*, 880 So. 2d 782, 783 (Fla. 2nd DCA 2004), a case the Court finds to be particularly on-point. There, the state appellate court had occasion to interpret the phrase at issue here, noting:

---

[6]In *Bonich,* the court noted that:

> The State Farm policy provides coverage only to relatives who are residing *primarily* with the named insured at the time of the accident in question. Thus, the policy language contemplates that a relative of the named insured may have one residence, more than one residence, or even live like a "rolling stone," but coverage turns on the quantity of time that the relative actually resides with the named insured. Plainly put, the policy does not provide coverage for relatives who might have lived primarily with the named insured at some point in the past but who have since moved on.

996 So. 2d at 945 (finding no coverage where son was no longer being supported by his mother, did not maintain a room or belongings in her house, was not free to come and go from her house, but had been "thrown out" of the house). Importantly, *Bonich* was resolved after an evidentiary hearing to resolve disputed issues of fact.

[7]In *Dwelle,* the court took a broad view of the provision and found that an insured's son was "primarily residing" with the insureds although living in a college dorm and staying at places other than his parents' home from time to time. 839 So. 2d at 899-900.

"A resident is one who lives at a place with no present intention of removing therefrom." *Kiplinger v. Kiplinger,* 147 Fla. 243, 2 So.2d 870, 873 (1941); *see also Trezza v. State Farm Mut. Auto. Ins. Co.,* 519 So.2d 649 (Fla. 2d DCA 1988) (applying *Kiplinger* definition of resident to case involving uninsured motorist policy coverage). A determination of residency involves consideration of both fact and intention. *See Kiplinger,* 2 So.2d at 873.

*Colon,* 880 So. 2d at 783. The *Colon* court considered these factors and applied them to the facts presented there, as follows:

Colon, her fiancé, and their baby were staying with Colon's grandfather while waiting for their water-damaged house to be repaired when she was injured in an auto accident. While staying with her grandfather, Colon continued to maintain the mortgage, utilities, phone, and mail service at her house. Further, there was no evidence that Colon listed her grandfather's address as her new permanent address or that she changed her driver's license or other documents to reflect a new place of residency.

We must consider not only the facts of Colon's situation, but also the evidence of Colon's intent while staying with her grandfather. For example, in *Trezza,* this court noted that Trezza clearly considered his parents' address to be his permanent address and home despite being stationed at different bases during his military service, and we found Trezza to be covered as a resident. 519 So.2d at 652. However, in *Whitten v. Allstate Insurance Co.,* 476 So.2d 794, 796 (Fla. 1st DCA 1985), when Whitten moved in with his parents in Florida after being laid off from his job in Indiana, the court noted a "total lack of evidence in the record that Whitten had any intention to continue living with his parents as of the date of the accident, and after the accident he returned to Indiana." The court then determined that Whitten was not a resident covered under his mother's policy despite his living with his parents and working for his father when the accident occurred. *Id.*

In this case, it is undisputed that Colon had a clear intent to move back to her house when the repairs were complete, and she did just that. Colon agreed that staying with her grandfather was "essentially a temporary living arrangement" and that she had no intent to change her permanent residence to her grandfather's house. Based on the facts and clear evidence of Colon's intent, we find that the trial court erred in determining that Colon resided primarily with her grandfather at the time of the accident.

*State Farm Mut. Auto. Ins. Co. v. Colon,* 880 So. 2d 782, 783-84.

Thus, under Florida law, a finding that a person "resides primarily" with another, requires a showing of both actual presence and intention. Here, the record contains a variety of evidence as to both elements that can be interpreted different ways. For example, Mr. Roy may have been living at Long Pine Road or living at Teakwood Court on the night in question. Even if he was living at

Teakwood Court, however, there is evidence that he never considered that to be his residence.  Too, Jake noted in his examination that he was living at Long Pine Road, and the record could support a finding that he primarily resided there.  However, Jake stated in deposition that he lived at Teakwood Court and had been living there "off and on" for years.  He registered his cars there and that is the address listed on his driver's license.  Like the plaintiff in *Colon*, this evidence could support a finding that the Long Pine Road residence was Jake's temporary living arrangement while he was renovating his permanent residence.  "When the evidence with respect to residence points in either direction, the issue is for the trier of fact." *State Farm Mut. Auto. Ins. Co. v. Fischer*, 16 So. 3d 1028, 1033 (Fla. 2d DCA. 2009).

### IV. Conclusion

As both State Farm's motion and Cushing's motion turn on genuine issues of material fact that are not resolvable summarily, it is **respectfully recommended** that both motions be **denied.**

A party waives the right to challenge on appeal a finding of fact or conclusion of law adopted by the district judge if the party fails to object to that finding or conclusion within fourteen days after issuance of the Report and Recommendation containing the finding or conclusion.

Recommended in Orlando, Florida on September 4, 2015.

David A. Baker

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy